UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JON ROYAL FLEMING,

    Petitioner,

    v.

KEN QUINN,

    Respondent.

Case No. C05-5719RJB

REPORT AND RECOMMENDATION REGARDING INJUNCTIVE RELIEF AND THE MERITS

**NOTED FOR**:
JULY 14TH, 2006

    This 28 U.S.C. § 2254 petition for habeas corpus relief has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 (b) and local Rules MJR 3 and 4. Petitioner in this action is seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254.

<u>INJUNCTIVE RELIEF</u>

    Preliminarily, the court must address petitioner's past filing requests for injunctive relief. Petitioner has filed two motions for temporary restraining orders or injunctions, (Dkt. # 41 and 45); and a motion to amend those motions, (Dkt. # 47). All complaining of lack of paper and legal supplies and lack of access to the law library. Prior to filing these motions petitioner filed his traverse and there is no outstanding briefing in this action. (Dkt. # 38).

ORDER- 1

Respondent has replied to the motions and explains that petitioner is on cell confinement as a result of his behavior. (Dkt. # 46) He is only allowed law library access if he can show a deadline within the next thirty days. Respondent argues petitioner can show no injury and is not entitled to relief. (Dkt. # 46). Respondent shows that during the 30 days prior to the traverse being due petitioner was given priority access privileges to the law library. (Dkt. # 46). Respondent also shows the amount of library access given petitioner. (Dkt. # 46). Once the traverse was filed, Prison authorities, who are not parties to this action, placed petitioner back on cell confinement to serve the remainder of his sanction. The reason for the sanction is not before the court and is not the subject matter of this action.

The basic function of injunctive relief is to preserve the status quo ante litem pending a determination of the action on the merits. Los Angeles Memorial Coliseum Com'n v. National Football League, 634 F.2d 1197, 1200 (9th Cir. 1980). A party seeking injunctive relief must fulfill one of two standards, the "traditional" or the "alternative." Cassim v. Bowen, 824 F.2d 791, 795 (9th Cir. 1987).

> Under the traditional standard, a court may issue preliminary relief if it finds that (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief. . . . Under the alternative standard, the moving party may meet its burden by demonstrating either (1) a combination of probable success and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor.

Id. (citations omitted).

To have standing to seek any form of injunctive relief petitioner must show real and immediate threat of irreparable injury and no adequate remedy at law. Nelsen v King County, 895 F. 2d 1248 (9th Cir. 1990). Petitioner fails to show that he will suffer any injury. All required pleadings in this petition have been filed. Accordingly, the motions for restraining orders and injunctions should be **DENIED.**

## INTRODUCTION

Petitioner does not challenge his conviction or sentence in this petition. Petitioner challenges the Department of Corrections decision not to credit his sentence with good time credits that were

ORDER- 2

lost as a result of disciplinary actions.

## CONVICTION HISTORY

In 1996 petitioner entered an *Alford* plea to two counts of burglary in the first degree and one count of unlawful possession of a firearm. (Dkt. # 20, Exhibit 2). He was sentenced in Mason County Superior Court to an exceptional sentence of 176 months. Petitioner's defense counsel was aware of a psychiatric report indicating petitioner may be incompetent to stand trial or enter a plea and may be suffering from paranoid schizophrenia. The report and information were not given to the sentencing Judge. (Dkt. # 20, Exhibit 2).

Petitioner's conduct in prison resulted in his spending the majority of the next 7 years in the Intensive Management Unit, IMU, and in his losing all good time credits as a result of his behavior. The loss of good time credits was the result of numerous major infractions that were the subject of hearings.

In 2001 the Washington State Supreme Court vacated petitioner's sentence. The decision was based on ineffective assistance of counsel. (Dkt. # 20, Exhibit 2). The Washington State Supreme Court held counsel was deficient in not bringing the psychiatric report to the trial court's attention so a competency hearing could be conducted.

The trial court conducted a competency hearing, and in 2002 petitioner was found competent. (Dkt. # 20, Exhibit 2). Petitioner contends he was only found competent after he received treatment. (Dkt. # 38).

In 2002 petitioner entered into a plea agreement in which he plead guilty to attempted burglary in the first degree, burglary in the first degree, and unlawful possession of a firearm in the first degree. This plea agreement was not an *Alford* plea. The plea agreement stipulated the state would drop other charges and the sentence of 176 months would be re-imposed.

Petitioner was given credit for all time he had served, and the Department of Corrections gave him 217 days good time credit for the time spent as a jail boarder from 2001 to 2002, but the Department of Corrections did not give petitioner one third off his sentence for the time served from 1996 to 2001 because petitioner had lost all good time as a result of his conduct while incarcerated

ORDER- 3

from 1996 to 2001.  (Dkt. # 20, Exhibit 2).

## PROCEDURAL HISTORY

Petitioner filed a Personal Restraint Petition challenging the Department's refusal to give him earned early release credits that had been taken away in disciplinary hearings from 1996 to 2001. Petitioner raised the following issues:

1. Should time served during illegal conviction turn into pre-sentence incarceration upon new conviction, and there be a Modification of Judgment and Sentence 4.5 (b) and Jail Certification to reflect both time served and earned early release credit (good time)?

2. Should the Due Process protections of the 14th Amendment of the U.S. Constitution protect both the illegal conviction and the illegal disciplinary hearings when defendant was found incompetent to stand trial?

3. Should time have been taken off sentence on past and future convictions when defendant has a liberty interest in receiving good time on new conviction?

4. Should defendant's rights to Due Process and RCW 10.77.060's protection extend to pre-sentence incarceration when the Wn.2d had found defendant incompetent?

5. Should DOC['s] failure to hold a competency hearing or appoint a staff advisor prior to disciplinary hearings forfeit DOC's right to impose such hearings or sanctions, due to prejudice upon defendant since Dr. Whitehead's psychological evaluation finding the defendant incompetent was in DOC central file?

6. Should defendant have a right under the equal protection clause of the 14th Amendment to the U.S. Constitution, Section 1, and the Washington State Constitution, Article 1, Section 12, to receive good time on pre-sentence incarceration when pre-sentence incarceration was previously on illegal vacated convictions sentence, following RCW 10.01.050?

7. Does the March 14th, 2002 Amendment [to] RCW 9.94A.728, violate the Ex Post Facto Clause in this instant case's May 30, 2002 sentence?

8. Was there ineffective assistance of counsel during Attorney Richard Woodrow's assistance prior to or during defendant taking his guilty plea?

9. Should defendant have been allowed to amend or withdraw his guilty plea since he had incorrectly been told he could make an Alford plea at sentencing, which advice was a condition and basis for his making a guilty plea to an exceptional sentence?

10. Was there an unlawful use of an incorrect P.S.I. report as there was indeed a presence of mitigating factors which were not allowed to be argued, and there was no time to object or prepare?

ORDER- 4

11. Should disciplinary infractions from 12-16-03 until present be dismissed as defendant's competency was tolled by Judge Toni Sheldon during this time period and no procedures were followed by DOC to protect defendant's due process rights or to vacate the prior history upon which the sanctions were based?

12. Should an inmate whose behavior merited classification as minimum custody placement have had his classification demoted to medium custody with a procedurally improper POL override when there had been no disciplinary hearing findings of guilt?

13. Should all infractions dated January 2001 to present be dismissed or sanctions reheard due to vacation of prior history which was relied upon for sanctions?

14. Should 603 infraction be dismissed for lack of evidence, lack of chance to secure evidence, absence of impartial fact finders, refusal to call witnesses, and vacation of prior history upon which the sanctions were based?

15. Should 662 infraction be dismissed for lack of evidence, refusal to call witnesses, refusal to look at account history, lack of chance to secure evidence, and vacation of prior history upon which the sanctions were based?

16. Should 718 infraction be dismissed for refusal to call witnesses, refusal of chance at continuance to secure evidence, refusal to admit evidence and vacation of prior history upon which the sanctions were based?

17. Should 605 be dismissed for lack of direct evidence, refusal to call witnesses, and vacation of prior history upon which the sanctions were based?

18. Should DOC Policy 350.100 directive 1(H) be correctly applied to this instant case, and defendant not lose any ERT associated with previous sentence?

(Dkt. # 20, Exhibit 4). Petitioner filed a supplement brief raising one additional issue:

19. Should infraction 600 be dismissed for failure to call witnesses, refusal to explain why witnesses were not called and for a total lack of evidence?

(Dkt. # 20, Exhibit 5). Petitioner then filed a motion to amend the petition and added one more issue:

20. Should a jury decide if Petitioner should receive an exceptional sentence for Counts IV, III, and V, due to the fact the reasons given for the exceptional sentence are now not constitutional, and plea was not voluntary, and was possibly a product of ineffective assistance of counsel?

(Dkt. # 20, Exhibit 10). On May 26th, 2005 the Washington State Court of Appeals denied the petition. (Dkt. # 20, Exhibit 2).

Petitioner filed a motion for discretionary review in which he raised the following issues:

ORDER- 5

1. Did the Chief Judge err by not determining that the time served prior to the May 7, 2002 conviction should now be considered pre-sentence incarceration? (Ground 1 of PRP).

2. Did the Chief Judge err by not determining if the Due Process protections of the 14th Amendment of the U.S. Constitution protect both convictions, and disciplinary hearings that take good time, when petitioner was found to be incompetent to stand trial by Dr. Whitehead's expert opinion? (Ground 2)

3. Did the Chief Judge err by not determining if petitioner had a right for DOC to hold a competency hearing or appoint a staff advisor prior to disciplinary hearings and sanctions due to the fact that Dr. Whitehead's psychological evaluation finding the defendant not culpable and not competent to stand trial was held in petitioner's DOC central file, stamped January 1997? (Ground 5)

4. Did the Chief Judge err by determining there was not ineffective assistance of counsel? (Ground 8, ground 10)

5. Did the Chief Judge err by not determining a reversal of the 1996 to 2002 disciplinary hearings would require a new sanction hearing for all sanctions imposed from May 2002, to present due to their [sic] all relying upon the "Past Infraction History" on the written findings for reason for sanctions?

6. Did the Chief Judge err by determining all witnesses were called and that there was 'some or any evidence' to support the hearing officer's conclusion in petitioner's 600 infraction hearing?

(Dkt. # 20, Exhibit 13 at v-vi). On August 3rd, 2005 the Washington State Supreme Court denied review. (Dkt. # 20, Exhibit 17).

On November 2nd, 2005 petitioner filed his federal habeas action and he raises the following issues:

1. Is there a Due Process protection under the 14th Amendment to the United States Constitution that Petitioner is entitled to for prison disciplinary hearings held from 2/6/1966 to 3/18/2002, in light of the expert opinion by Dr. Whitehead that Petitioner was incompetent to stand trial when disciplinary hearings sentenced Petitioner to additional time in prison?

2. Ineffective assistance of counsel for failure to argue that earned early release time lost through disciplinary sanctions should not apply to new conviction.

(Dkt. #3). In addition petitioner has filed a "memorandum" in which he raises issues A through N as follows:

A. To determine and establish case law for a Petitioner whos [sic] Criminal conviction was vacated after 7 years due to ineffective assistance of counsel that did not present his evidence of mental incompetence to stand trial to the court, and as a result, Petitioner was sent to Prison instead of a Mental Hospital for treatment, and held in

ORDER- 6

            Solitary Confinement, and 'Sentenced' to 5 years loss of goodtime in disciplinary hearings he does not remember for infractions he did not commit.

    B.    For this <u>special</u> situation, (vacated conviction due to doubt to [sic] competency) what 14th Amendment due process rights apply?

    C.    In light of the <u>new evidence</u> that DOC has a copy of Dr. Whiteheads expert opinion of Mr. Flemmings [sic] Mental Incompetence, is Mr. Fleming entitled to the protections of and due process of ; WAC 137-28-290 (2)(e), WAC 137-28-300 (1), WAC 137-28-340, WAC 137-28-360, for all disciplinary hearings and Sanctions from 2/6/ 1996 to 3/18/2002? And re-sanction of <u>all</u> hearings past 3/18/2002?

    D.    Is petitioner entitled to have competency determined now?

    E.    Is petitioner entitled to equitable tolling of <u>any</u> Habeas or State deadline due to Mental Incompetence and breakdowns and current Mental illness?

    F.    Does the <u>lack</u> of procedures to protect Mentally incompetent prisoners at disciplinary hearings where goodtime is taken violate Due Process?

    G.    Does petitioner have a <u>Substantive Due Process</u> right to be found competent prior to being 'sentenced' to a loss of goodtime at a prison disciplinary hearing? That he cannot waive!?

    H.    Does petitioner had a <u>Procedural Due Process</u> right to be found competent prior to being 'sentenced' to a loss of goodtime at prison disciplinary hearings?

    I.    In light of the informative Kori L. Lake decision, does petitioner have a right to have his mental illness considered on all Sanctions?

    J.    Is petitioner entitled to a staff advisor for prison disciplinary hearings when facing loss of goodtime when doubt to competency exists?

    K.    Should the record be expanded, Discovery granted, or evidence hearings held to grant relief due to the facts raised?

    L.    Should counsel be appointed?

    M.    Should this be remanded <u>back</u> to the Washington Supreme Court for relief to be determined?

    N.    Is petitioner entitled to immediate release from prison due to return of lost goodtime?

(Dkt. # 4, pages 3 to 6).

## EVIDENTIARY HEARING NOT REQUIRED

In its' Order Directing Service and Response, the court directed respondent to state in his

ORDER- 7

response whether or not an evidentiary hearing was necessary. Accordingly, respondent has informed the court that he does not think an evidentiary hearing is required. The function of an evidentiary hearing is to try issues of fact, such a hearing is unnecessary when only issues of law are raised. *See e.g.* Yeaman v. United States, 326 F.2d 293 (9th Cir. 1963). After careful review of the record, and despite petitioners requests to expand the record and conduct hearings, the undersigned judge concludes that there are no relevant factual disputes to resolve in order for the court to render its decision in this case. Accordingly, an evidentiary hearing was not conducted.

## STANDARD

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. Engle v. Isaac, 456 U.S. 107 (1983). Section 2254 is explicit in that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). The Supreme court has stated many times that federal habeas corpus relief does not lie for mere errors of state law. Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984); Estelle v. McGuire, 502 U.S. 62 (1991).

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). Further, a determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1). Thus, the court does not conduct a de novo review of the state court proceedings or re-try the individual disciplinary hearings at issue in this case.

## DISCUSSION

Exhaustion and procedural bar.

Respondent concedes petitioner has exhausted grounds one and two and issues A, B, and C.

ORDER- 8

(Dkt. # 19, page 8). Respondent contends the remaining issues are unexhausted and procedurally barred. (Dkt. # 19, pages 10 through 14). Review of the issues raised by petitioner in his motion for discretionary review show respondent's position to be correct. (Dkt. # 20, Exhibit 13).

In order to satisfy the exhaustion requirement, petitioner's claims must have been fairly presented to the state's highest court. Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985). A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of prisoners' federal rights. Duncan v. Henry, 513 U.S.364, 115 S.Ct. 887, 888 (1995). It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made. Id, *citing* Picard v. Connor, 404 U.S. 270 (1971) and Anderson v. Harless, 459 U.S. 4 (1982). The majority of "issues" in this petition are unexhausted. The court agrees that grounds one and two have been fully exhausted as have issues A, B, and C.

Normally, a federal court faced with an unexhausted or mixed petition dismisses the petition without prejudice, so that the petitioner has an opportunity to exhaust the claims in state court. Rose v, Lundy, 455 U.S. 509, 522 (1982). The exhaustion doctrine is based on comity, not jurisdiction. Rose v, Lundy, 455 U.S. at 518. Here, petitioner has filed a full round of state petitions and is precluded by state law from filing a second of successive petition in state court. Thus, this court must consider if the unexhausted issues are procedural barred.

For procedural bar to occur a petitioner must fail to raise an issue at each stage of state review and thereby fail to exhaust that issue. If the states procedural rules prevent the petitioner from returning to state court or filing another petition and exhausting that issue the issue cannot be raised in federal court and is procedurally barred

When a state prisoner defaults on federal habeas claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or show that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750-751 (1991).

ORDER- 9

<u>Cause and Prejudice</u>:   To satisfy the "cause" prong of the cause and prejudice standard, petitioner must show that some objective factor external to the defense prevented him from complying with the state's procedural rule.  <u>Coleman</u>, 501 U.S. at 752-753 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)).  Prejudice exists if the alleged errors were of constitutional dimensions and worked to the defendant's actual and substantial disadvantage.  <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982).  Petitioner has not shown any facts to establish that an objective factor external to the defense prevented him raising his issues in his personal restraint petition and motion for discretionary review.  Because petitioner has not established cause for the default, it is unnecessary to consider whether he was actually prejudiced.

<u>On the Merits</u>.

Petitioner claims that because of his mental status he was entitled to protection under the Due Process Clause of the 14th Amendment with regard to disciplinary hearings held between 1996 and 2001.  He contends he is entitled to the good time credits that were taken away or not earned.  The Washington State Court of Appeals considered his claims in a number of contexts and held:

> <u>Issue 1</u>
> ....
>
> However, under RCW 9.94A.728 (1), earned release time, sometimes called good time, is "for good behavior and good performance, as determined by the correctional agency having jurisdiction."  While an offender can earn earned release time for pre-sentence incarceration, RCW 9.94A.728(1) does not make earned time for pre-sentence incarceration inviolable.  From October 10, 1996 to March 22, 2001, Fleming was under the jurisdiction of the Department, serving his sentence.  Even assuming that the vacation of his sentence caused that time to become pre-sentence incarceration time, his eligibility for earned release time for that time was still determined by the Department.  The Department determined that as a result of disciplinary infractions during that time, Fleming had lost the earned release time he had earned.  Fleming shows no violation of RCW 9.94A728(1) in calculating his release credits.
>
> <u>Issues 2 and 4</u>
>
> Fleming argues that because the supreme court found that he was incompetent to enter his plea of guilty in 1996, and was not found competent until 2002, he was incompetent as to any disciplinary infraction proceedings that occurred during that time.  Thus, he contends he is entitled to the earned release credits that the Department ruled he had lost as a result of the disciplinary infractions.
>
> Fleming misapprehends the decision of the supreme court.  It did not find he was

ORDER- 10

incompetent in 1996. It found only that his trial counsel denied him effective assistance of counsel regarding having the trial court determine competency. Fleming has not demonstrated that he was incompetent, for purposes of disciplinary infraction proceedings, between 1996 and 2002. Thus, he fails to demonstrate that the Department erred in ruling that as a result of disciplinary infractions, he had lost any earned release credits he had accumulated between 1996 and 2001.

Issue 3

Fleming argues that under RCW 9.94A.728(1), he has a constitutionally protected liberty interest in having earned release time, for the time served under his vacated judgement and sentence, credited against his current sentence. But while RCW 9.94A.728(1) provides that an offender can earn release time while under pre-sentence incarceration, RCW 9.94A728(1) does not provide that the offender cannot lose the earned release time that he accumulates. "Each correctional institution is independently responsible for the award or denial of good time to the offenders over which it has jurisdiction." *In Re Personal Restraint of Williams*, 121 Wn.2d 655, 663, 853 P.2d 444 (1993). The Department concluded that because of his disciplinary infractions, Fleming lost whatever earned release time he had accumulated between 1996 and 2001. Fleming shows no violation in his liberty interest resulting from the Department's decisions.

Issue 5

Fleming argues that because the supreme court found he was incompetent in 1996, and because the trial court did not find him competent until 2002, he was entitled to a staff advisor for any disciplinary infraction proceedings between 1996 and 2002. He contends that because the Department did not give him a staff advisor, his disciplinary infractions between 1996 and 2002 were illegal. Accordingly, he contends he is entitled to regain the earned release time he lost as a result of those disciplinary infractions.

Again, Fleming misapprehends the supreme court's decision. It did not find he was incompetent from 1996 on. No court ever made a finding that he was incompetent. He fails to present evidence that he was unable to defend or represent himself adequately during his disciplinary proceedings, such that he would have been entitled to a staff advisor. WAC 137-28-340 and *In Re Personal Restraint Petition of McVey*, 99 Wn. App. 502, 508-09, 993 P.2d 267 (1999). The absence of a staff advisor during the 1996 to 2002 disciplinary infraction proceedings does not make them illegal.....

Issues 8, 9 and 10

Fleming argues that his 2002 trial counsel denied him effective assistance of counsel in a number of regards. To demonstrate ineffective assistance of counsel, Fleming must show that his counsel's performance was deficient and that a reasonable probability exists that the result of his proceeding would have been different but for that deficient performance. *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). ....

Second, Fleming contends that his counsel was deficient in failing to assure he received the earned release credits he believes he in entitled to. But as discussed in Issues 1 through 5, he is not entitled to any earned release credits beyond those the

ORDER- 11

1    Department has credited him with.  He fails to show deficient performance.
2 (Dkt. # 20, Exhibit 2. pages 3 to 6).
3    To obtain relief petitioner must show the ruling of the state court resulted in a decision that
4 was contrary to, or involved an unreasonable application of, clearly established federal law, as
5 determined by the Supreme Court; or  resulted in a decision that was based on an unreasonable
6 determination of the facts in light of the evidence presented to the state courts.  28 U.S.C. §2254(d).
7    The due process protections an inmate has in a disciplinary hearing where an inmate faces the
8 loss of good time that has been earned and credited against his sentence were set forth in <u>Wolff v.</u>
9 <u>McDonnell</u>, 418 U.S. 539 (1974).  The court in <u>Wolff</u> noted the full panoply of rights owed a
10 criminal defendant do not apply to prison discipline and stated:

> A prisoner is not wholly stripped of constitutional protections, and though prison disciplinary proceedings do not implicate the full panoply of rights due a defendant in a criminal prosecution, such proceedings must be governed by a mutual accommodation between institutional needs and generally applicable constitutional requirements.
>
> Since prisoners in Nebraska can only lose good-time credits if they are guilty of serious misconduct, the procedure for determining whether such misconduct has occurred must observe certain minimal due process requirements (though not the full range of procedures mandated in <u>Morrissey</u>, supra, and <u>Scarpelli</u>, supra, for parole and probation revocation hearings) consonant with the unique institutional environment and therefore involving a more flexible approach reasonably accommodating the interests of the inmates and the needs of the institution.
>
> (a) Advance written notice of charges must be given to the disciplinary action inmate, no less than 24 hours before his appearance before the Adjustment Committee.
>
> (b) There must be 'a written statement by the factfinders as to the evidence relied on and reasons for (the disciplinary action).'<u>Morrissey v. Brewer</u>, supra, 408 U.S., at 489, 92 S.Ct., at 2604.
>
> (c) The inmate should be allowed to call witnesses and present documentary evidence in his defense if permitting him to do so will not jeopardize institutional safety or correctional goals.
>
> (d) The inmate has no constitutional right to confrontation and cross-examination in prison disciplinary proceedings, such procedures in the current environment, where prison disruption remains a serious concern, being discretionary with the prison officials.
>
> (e) **<u>Inmates have no right to retained or appointed counsel in such proceedings, although counsel substitutes should be provided in certain cases</u>**.

ORDER- 12

Wolff, at 541, 542. (Emphasis added).  Thus, the holding of the supreme court does not mandate a staff advisor or address competency issues.  The Washington State Court of Appeals decision was not contrary to clearly established law as decided by the Supreme Court and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  Petitioner failed to place evidence that he was actually incompetent from 1996 to 2001 before the state court and he is not entitled to relief.  This petition should be **DISMISSED.**  A proposed order accompanies this report and recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **July 14th, 2006**, as noted in the caption.

DATED this 22nd day of June, 2006.


*/S/ J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge

ORDER- 13